IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PASSENGER TRANSPORTATION ) | |
| SPECIALISTS INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | NO. CIV-12-0732-HE |
| ) | |
| CATERPILLAR INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

# ORDER

Plaintiffs, Passenger Transportation Specialists Inc., d/b/a Red Carpet Charters ("PTS") and C & J Leasing #1, LLC, sued Caterpillar Inc, ("Caterpillar"), Caterpillar Financial Services Corporation, d/b/a CAT Financial ("CAT Financial"), and Warren Power & Machinery, Inc., d/b/a Warren CAT ("Warren CAT"), asserting claims against all defendants for breach of implied and express warranty, fraudulent misrepresentation, breach of contract and violation of the Oklahoma Consumer Protection Act. They also assert a manufacturer's products liability claim against Caterpillar. Plaintiffs' claims arise out of allegedly defective Caterpillar C13 engines that were installed in buses they purchased. Plaintiffs have moved for summary judgment against Warren CAT and Caterpillar and all defendants have moved for summary judgment on plaintiffs' claims against them. Multiple Daubert[1] motions also have been filed. This order addresses the cross-motions for summary judgment filed by plaintiffs and Warren CAT.

Summary judgment is appropriate only "if the movant shows that there is no genuine

---

[1]*Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In determining that Warren CAT's motion should be granted and plaintiffs' denied, the court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiffs.

Background

Jeff Polzien founded PTS, a motor coach charter business, in 1986. PTS has offices in Oklahoma City, Tulsa and McKinney, Texas. C & J Leasing is an Oklahoma limited liability company that apparently leases buses to PTS. Polzien is the president and sole owner of PTS. He also owns C & J Leasing. In 2006 and 2007 PTS purchased forty buses from ABC Bus Companies, Inc.[2] The buses were powered by C13 ACERT diesel engines ("C13 engines") manufactured by Caterpillar. Van Hool manufactured the bus chassis and CAT Financial financed some of the purchases. The engines were covered by standard Caterpillar warranties.

Plaintiff asserts that, prior to its purchases of the C13 engines, defendants, or the "CAT Entourage," actively sought out its business at trade shows and industry events. Polzien was provided all expense paid trips to Caterpillar's Peoria, Illinois plant and to

---

[2]*It is unclear why C & J Leasing is involved in this lawsuit. The complaint alleged that "plaintiffs," i.e. both PTS and C & J Leasing, bought the 40 buses involved here [Doc. #1, p. 3, ¶9]. But plaintiffs' summary judgment motion asserts, as a matter of undisputed fact, that PTS bought the 40 buses. Doc. #114, p. 8, ¶6. If that is so, then it is unclear what, if any, role C & J Leasing has in this dispute. No basis for a claim by C & J Leasing is apparent. At the very least, there is no basis shown for summary judgment in its favor on the present submissions. Therefore, and as plaintiffs' references to "plaintiffs" appear to mean PTS anyway, this order will refer to "plaintiff," meaning PTS, singular.*

2

Belgium for a tour of the Van Hool bus plant. He testified that Caterpillar, CAT Financial and Warren CAT "as a group" sold him "the package deal" and "acted as one entity to – to convince [him] that the C13 and ACERT technology was the way to go." Doc. #144-2, p. 2. Polzien stated he did "not distinguish between those three." *Id.*

Plaintiff fails, though, to offer evidence that Warren CAT was present at the various events where plaintiff contends representatives from the three defendants worked together to negotiate the sale. *See* Doc. #114-2, pp. 2-6.[3] Plaintiff has submitted evidence that Jeff Headean, a Caterpillar sales manager, arranged for Polzien to meet with three high level Warren CAT representatives after he told Headean that, "before [he] would ever spec CAT engines, [he] would have to have a very good comfort level with Warren CAT." Doc. #114-1, pp. 7-8. The meeting, which lasted approximately one hour, took place sometime in the summer of 2005. Polzien said he explained during the meeting how important it was to his business to get any bus that was not working back on the road as quickly as possible. He stated that, while plaintiff did not get "a written document with Warren CAT," Warren CAT representatives assured him they understood the needs of plaintiff's business and made a verbal commitment to plaintiff as to priority of service, timeliness of service and quality of service. Doc. #114-1, p. 7.[4] Polzien could not remember the names of the Warren CAT

---

[3]*Page references for briefs and exhibits are to the CM/ECF document and page number. For example, page 269 of Volume 2 of Jeff Polzien's deposition, which is Exhibit 2 to plaintiff's brief in support of its motion is referred to as Doc. #114-2, p. 5.*

[4]*Although plaintiff states in its brief that the Warren CAT representatives "assured the Plaintiffs <u>again</u>," Doc. # 114, p. 7, ¶4 (emphasis added), there is no evidence that Warren CAT had previously provided plaintiff with any assurances.*

employees who attended the meeting. That is all plaintiff offers to show Warren CAT played a "role in <u>selling</u> the C-13 engines to Plaintiffs." *See* Doc. #144, p. 7.

Plaintiff asserts that over a six year operating period the forty charter buses powered by the C13 engines experienced 344 incidents that resulted in costly downtime and loss of use of the buses. Plaintiff claims "[t]he subject engines were defective at the time they entered the market," Doc. #114, p. 11, ¶ 24, and that repeated repairs were required "[d]ue to systematic failures associated with the C-13 ACERT diesel engines." Id. at 9, ¶8. Warren CAT performed both service and repairs on the Caterpillar C13 engines in plaintiff's buses. In accordance with the service repair warranty that appeared on the back of each invoice, Warren CAT warranted its service repairs against defective workmanship for ninety days from the repair date. The warranty is noted on the front of the invoice and subject to certain conditions, included the following:

> (1) This warranty extends only to defective workmanship by Warren CAT. Performance failures or any other operational difficulties whatsoever caused by or related to defects in new or rebuilt parts are warranted only in accordance with, and only to the extent of, any warranties given with respect to such parts by the manufacturers or suppliers thereof. No independent or additional warranty with respect to such parts is made or given by Warren CAT.
> ....
> (6) Owner must notify Warren CAT immediately following the occurrence of any performance failure or other operational difficulty subject to this warranty. Failure to give such immediate notification will operate to release Warren CAT from any liability under this warranty.
> ....
> (8) THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER GUARANTEES OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS

4

> FOR A PARTICULAR PURPOSE. LIABILITY UNDER THIS WARRANTY IS EXPRESSLY LIMITED TO THE COST OF REPAIR OR REPLACEMENT LIABILITY. LIABILITY FOR ANY OTHER DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, INDIRECT OR OF ANY NATURE WHATSOEVER, IS EXPRESSLY EXCLUDED.

Doc. #126-7, p. 3.

In 2009 Caterpillar withdrew its C13 and C15 diesel engines from the market.[5] Plaintiff asserts that after that happened, "[t]he performance of Warren CAT further diminished, as the timeliness of repairs greatly declined." Doc. #114, p. 9, ¶ 10. Plaintiff also complains that, despite completing numerous repairs to the buses, Warren CAT "never cured the defects," but just kept "putting a Band-Aid on the problems." *Id* at ¶ 11. Instead of investigating why the parts kept failing, plaintiff contends Warren CAT followed Caterpillar's instructions and repeatedly made the same repairs. Plaintiff asserts that Warren CAT knew it was replacing defective parts with defective parts that would not permanently fix or solve the problems.

## Analysis

Plaintiff asserts claims against Warren CAT for breach of contract, breach of implied and express warranty, fraudulent misrepresentation and violation of the Oklahoma Consumer Protection Act.

### Breach of Contract and Warranties

Plaintiff does not distinguish in its complaint between defendants but rather, with the

---

[5]*Warren CAT disputes that Caterpillar withdrew "all" C13 and C15 engines from the market. The difference is immaterial for purposes of resolving the parties' motions.*

exception of the manufacturer's products liability claim, asserts all claims against all defendants. Similarly, in its brief plaintiff essentially makes the argument that the defendants are jointly liable for any problems it incurred as a result of its purchase of the C13 engines.

Plaintiff admits that it did not enter into a written contract with Warren CAT, but attempts to hold Warren CAT liable based on its agreement with ABC Bus Company, the "third party distributor." Doc. #114, p. 17. Plaintiff asserts that:

> The signing of the papers, with ABC Bus Company, also constituted an acceptance and full performance of a separate oral contract with Warren CAT. The "CAT Family" was merely seeking a commitment to the engines from the Plaintiffs, in return for their promise of a quality product, financing, as well as prompt and reliable repair service from Warren CAT; they were not seeking direct payment from Plaintiffs. . . . This is evidenced from Defendants awareness that Plaintiffs planned to obtain the engines through "third parties.

Doc. #114, p. 19. Plaintiff does not support this argument with <u>any</u> citation of authority or meaningful analysis. All plaintiff has offered is evidence that Polzien met once with some Warren CAT representatives and they promised to provide plaintiff with quality and timely service. While such promises might have helped persuade plaintiff to purchase the buses, they are not a basis for a claim against Warren CAT if the engines turned out to be defective. There simply is no evidence in the record on which a reasonable jury could hold Warren CAT liable to plaintiff for anything to do with the C13 engines other than their maintenance and repair.[6]

---

[6]*Indeed, plaintiff's response brief seems in places to concede this: "Furthermore, it is not disputed by either party that Defendant was not responsible for the design, manufacture, or distribution of the subject engines." Doc. #144, p. 10.*

The only plausible contract claims plaintiff has against Warren CAT are based on Warren CAT's alleged failure to comply with its oral agreement to provide plaintiff with timely and quality repair service, Doc. #1, ¶ 64, and Warren CAT's alleged breach of its service repair warranty, referred to in the complaint as "the implied warranty of good and workmanlike performance applicable to the repair service of the engines." *Id.* at ¶ 29.

To establish breach of contract, plaintiff must prove that (1) the parties formed a valid contract, (2) defendant breached the contract, and (3) damages resulted from the breach. Digital Design Grp., Inc. v. Info. Builders, Inc., 24 P.3d 834, 843 (Okla.2001).[7] Although it disputes it entered into an oral contract with plaintiff in the summer of 2005, Warren CAT asserts that, if it did, the statute of frauds bars plaintiff's oral contract claims as to most of the buses. The court agrees.

Under Oklahoma law, an oral agreement that by its terms is not to be performed within a year from its making is barred by the statute of frauds. 15 Okla. Stat. 136. Thirty-two of the forty buses were not delivered until more than a year after plaintiff contends the parties met and entered into their contract.[8] Therefore, plaintiff's oral contract claim as to those buses is barred. However, even if the statute of frauds did not apply, plaintiff's claim as to the thirty-two buses would still fail for the same reason it fails as to the remaining eight

---

[7]*This is a diversity action so state law applies. As the parties cite Oklahoma law in their briefs with respect to all claims and there is no apparent reason why the law of another state would apply, Oklahoma law will be applied to plaintiff's claims.*

[8]*While Warren CAT raised the statute of frauds defense in its response brief, plaintiff could have addressed the issue in a reply brief but did not. Under the local rules, leave of court is not required to file a reply brief.*

buses – a lack of proof that Warren CAT failed to perform timely or quality repairs.

The only evidence plaintiff offers that Warren CAT did not perform timely service consists of Polzien's testimony, in which he states: "The already poor performance at Warren as far as timeliness of repairs got even worse. There was just absolutely no commitment. I remember times driving by Warren CAT – which I don't get by there very often. It's not a direction I go. But I can remember driving by there on a couple of occasions and thinking it was my parking lot there was so many buses parked back there." Doc. 114-1, p. 13. The problem is plaintiff does not give any examples of the "already poor performance." It also did not offer any other basis from which a reasonable jury could conclude that Warren CAT was dilatory when it worked on plaintiff's buses. The only other evidence plaintiff cites consists of the testimony of its damages expert relating to losses resulting from downtime. That does not show, though, that the downtime was the result of unreasonable delay attributable to Warren CAT.[9]

Similar evidentiary deficiencies exist with plaintiff's claim that Warren CAT failed to service and repair plaintiff's C13 engines in a workmanlike manner. As Warren CAT points out, plaintiff's complaint really is not about the repair work that was done. Rather, plaintiff's argument is that, despite making numerous repairs to the buses, Warren CAT "never cured the defects of the buses." Doc. #114, p. 9, ¶11. Plaintiff again is attempting to hold Warren CAT liable for the asserted defects in the C13 engine, rather than for the

---

[9]*Plaintiff also relies on the affidavits of Richard Hunt. Those affidavits have been stricken by separate order. See Doc. #160.*

repair work it performed.

Polzien testified that Warren CAT repeatedly made the same repairs without finding out why the parts kept failing. However, the written warranty disclaims liability for defective parts. It provides: "Performance failures or any other operational difficulties whatsoever caused by or related to defects in new or rebuilt parts are warranted only in accordance with, and only to the extent of, any warranties given with respect to such parts by the manufacturers or suppliers thereof. No independent or additional warranty with respect to such parts is made or given by Warren CAT." Doc. #126-7, p. 3. As Warren CAT notes, plaintiff's repeated assertion that "[t]he subject engines were defective at the time they entered the market" Doc. #114, p. 11, ¶24, is inconsistent with its claim that Warren CAT is liable for failing to perform repair services in a workmanlike manner.

Plaintiff has not offered any argument which would avoid the impact of the disclaimer language in the warranties, nor has it offered evidence sufficient to create a justiciable question as to breach of the alleged oral contract.[10] There is no admissible evidence from which a reasonable jury could conclude Warren CAT failed to repair the buses in a timely and adequate manner. Plaintiff's motion for summary judgment on its breach of contract claims will be denied and Warren CAT's motion for summary judgment on those claims will

---

[10]*Plaintiff did not address Warren CAT's argument regarding the contractual limitation of remedy provision included in its service warranty. That provision limits recovery to the cost of repair or replacement. While it would preclude most of the damages plaintiff seeks, it would not completely bar plaintiff's claims, if plaintiff could establish the other elements of its breach of contract claims. See generally Elsken v. Network Multi-Family Sec. Corp., 49 F.3d 1470, 1473-75 (10th Cir. 1995).*

9

be granted.

Fraudulent misrepresentation

The elements of fraudulent misrepresentation under Oklahoma law are: "1) a false material misrepresentation, 2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth, 3) with the intention that it be acted upon, and 4) which is relied on by the other party to his (or her) detriment." Bowman v. Presley, 212 P.3d 1210, 1218 (Okla.2009). Each element must be "proved by clear and convincing evidence." *Id.* While there are several reasons why plaintiff's fraudulent misrepresentation claim fails, only one need be discussed. Plaintiff relies on the same evidence to support both its breach of contract and its fraudulent misrepresentation claims. For the reasons discussed earlier, plaintiff did not present sufficient evidence from which a reasonable jury could conclude that Warren CAT failed to deliver on its promise to deliver timely and quality repair service. Therefore plaintiff has not come forth with evidence sufficient to create a fact question as to whether Warren CAT made a false material representation regarding its intention to provide such service. Plaintiff's motion for summary judgment on its fraudulent misrepresentation claim will be denied and Warren CAT's motion for summary judgment on that claim will be granted.

Oklahoma Consumer Protection Act

To recover under the Oklahoma Consumer Protection Act ("OCPA"), a consumer must show: "(1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business;

(3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." Patterson v. Beall, 19 P.3d 839, 846 (Okla. 2000). An unlawful practice includes "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." 15 Okla. Stat. §§ 752(13); 753(20). Plaintiff bases his OCPA claim against Warren CAT on its being part of the CAT entourage that "acted as one entity to – convince me [Polzien] that the C-13 and ACERT technology was the way to go," its "awareness of the defective nature of the engines," its continuing "to make the same repairs time and time again" and it never having had "any intention in making the Plaintiffs a top priority." Doc. #114, pp. 22, 23. In other words, plaintiff relies on the same theory and evidence to support this claim as he relies on for his other claims. For the same reasons stated above it, too, fails. Plaintiff's motion for summary judgment on its Oklahoma Consumer Protection Act claim will be denied and Warren CAT's motion for summary judgment on that claim will be granted.

Accordingly, the motion for summary judgment filed by plaintiff Passenger Transportation Specialists Inc., d/b/a Red Carpet Charters and C & J Leasing #1, LLC [Doc. #114] is **DENIED**. The motion for summary judgment filed by Warren Power & Machinery, Inc., d/b/a Warren CAT [Doc. #126] is **GRANTED**. Judgment will be entered in its favor when the case is concluded with respect to all claims and parties. Fed.R.Civ.P. 54(b).

**IT IS SO ORDERED**.

Dated this 9th day of October, 2014.

JOE HEATON
UNITED STATES DISTRICT JUDGE